UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TORYANA ANTIONE ROYAL,

                Plaintiff,          Case No. 18-13640
                                                 Honorable George Caram Steeh
                                                 Magistrate Judge David R. Grand
v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [12,14]**

Plaintiff Toryana Antione Royal ("Royal") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF No. 12; ECF No. 14) that have been referred to this court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I. RECOMMENDATION

For the reasons set forth below, the Court recommends that the Commissioner's Motion for Summary Judgment (ECF No. 14) be **GRANTED**, Royal's Motion for Summary Judgment (ECF No.12) be **DENIED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

## II. REPORT

### A. Procedural History

On April 18, 2016, Royal filed applications for SSI and DIB benefits, alleging disability

beginning on April 24, 2000. (Tr 194; 205). Royal's applications were denied on September 15, 2016. (Tr. 114). Thereafter, Royal filed a timely request for an administrative hearing, which was held on August 11, 2017, before ALJ Carol Guyton. (Tr. 22-75). Royal, who was represented by attorney Lloyd Pont, testified at the hearing as did vocational expert ("VE") Scott Silver. (*Id.*). On October 4, 2017, the ALJ issued a written decision holding that Royal was not disabled. (Tr. 7-20). On October 2, 2018, the Appeals Council denied review. (Tr.1-3). Royal filed for judicial review of the final decision on November 21, 2018. (ECF No. 1.)

### B. Framework for Disability Determinations

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" in relevant part as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

2

> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps . . . .  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### D. The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Royal was not disabled under the Act.  At Step One, the ALJ found that Royal had not engaged in substantial gainful activity since October 9, 2014.  (Tr. 12).  At Step Two, the ALJ found that Royal had the following severe impairments:  "a post-gunshot wound to the head and left shoulder which has caused a speech impediment, [] borderline intellectual functioning, and cannabis abuse."  (Tr. 12).  At Step Three, the ALJ found that Royal's impairments did not meet or medically equal section 1.00B2b (bilateral inability to perform fine and gross movements) or 12.05 (intellectual disorders).  (Tr. 13-14).

The ALJ then assessed Royal's residual functional capacity ("RFC"), concluding that Royal was capable of performing light work as defined by 20 C.F.R. § 416.967(b) with the following list of exceptions:  "he cannot climb ladders or ropes or scaffolds, and *cannot do overhead reaching with his left upper extremity, and can occasionally do pushing and pulling with that extremity, and can frequently handle and finger with his left upper extremity,* and can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, and needs a cane for uneven terrain and slopes, and cannot be exposed to hazardous machinery or unprotected heights,

and must avoid concentrated vibration, and cannot do work with frequent public speaking, and is limited to simple repetitive tasks with simple work-related decisions and few workplace changes." (Tr. 14-15)(emphasis added).

At Step Four, the ALJ found that Royal did not have any past relevant work. (Tr. 17). At Step Five, the ALJ concluded, based in part on Vocational Expert Scott Silver's testimony, that Royal was capable of performing a significant number of jobs that exist in the national economy, including collator (464,000), routing clerk (53,000) and inspector hand packager jobs (11,000). (Tr. 17). As a result, the ALJ concluded that Royal was not disabled under the Act. (Tr. 18).

**E.     Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not

the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**F.    Analysis**

Royal presents two arguments in his motion for summary judgment. First, Royal argues that the ALJ erred in finding that he was capable of performing a significant number of jobs that exist in the national economy because the VE testified that no jobs would exist for someone with Royal's RFC. (ECF No. 12, PageID.671-72.) Second, he argues that the RFC adopted by the ALJ is not supported by substantial evidence. (*See id.* at PageID.672-76.) These arguments lack merit.

*1.    The RFC Did Not Preclude All Work*

In his first argument, Royal asserts, "In her RFC assessment, the ALJ found that [he] 'can occasionally do pushing and pulling with [his left upper extremity.]' She then asked the VE about that precise limitation in the hypothetical (which matched the RFC exactly in this respect), to which

5

the VE testified that this limitation would preclude all the jobs he identified . . ." (ECF No. 12, PageID671.) Thus, Royal argues that the ALJ's ultimate finding that jobs existed in the national economy that Royal could perform is inconsistent with the VE's testimony. Royal's argument is fundamentally flawed because it conflates the VE's testimony as to the *actual RFC* the ALJ adopted for Royal with the VE's testimony to a hypothetical question about a claimant with a *different RFC*.

The ALJ first questioned the VE about a person who had the following left upper extremity limitations: "can occasionally push and pull"; "no overhead reaching"; and "can frequently handle and finger," and the VE testified that numerous jobs existed for such person. (Tr. 61). The RFC the ALJ ultimately adopted with regard to Royal's left arm contained identical limitations: 1) "*cannot* do overhead reaching;" 2) "can *occasionally* do pushing and pulling;" and 3) can *frequently* "handle and finger." (Tr. 14)(emphasis added). In other words, when asked about jobs that would be available for a hypothetical person with **the precise left arm limitations the ALJ found Royal to have**, the VE testified that jobs existed (collator, routing clerk or inspector hand packager). (Tr. 17, Tr. 63-64).

Royal's present argument attempts to seize on the ALJ's subsequent question to the VE in which the ALJ asked about a *different and more restricted* hypothetical claimant who could only "occasionally use" his left upper extremity. (ECF No. 12, PageID.671) (emphasis added) (citing Tr. 66). The VE testified that there would be no jobs available for such a person:

> Q   And what about, going back to the first hypothetical, what about the person can **only occasionally use the, the left upper extremity**? . . .
>
> A.   That would preclude all the jobs with occasional use of the left extremity, all these jobs require frequent use of the, of both extremities.

6

(Tr. 66) (emphasis added).

The bolded language makes clear that in this particular hypothetical, the ALJ and VE were contemplating a claimant who could use his left upper extremity – in any and all capacities – "only occasionally." This must be the case because the VE had previously specifically testified that jobs existed for a person who "can occasionally push and pull" as long as he could "frequently handle and finger." (Tr. 61). In short, it is clear that the VE's testimony about a hypothetical claimant who could use his left upper extremity "only occasionally" does not undermine the ALJ's decision.

    *2.*    *The RFC is Supported by Substantial Evidence*

Royal points out that Dr. Edmond, the consultative examiner in the case, stated that Royal "cannot depend on his left upper extremity on a continued type basis because of the pathology as relates to his left shoulder." (Tr. 596). He argues that the ALJ should have made a finding of disability based on this statement alone under Social Security Ruling 96-8p. (ECF No. 12, PageID.673.) This argument lacks merit.

First, Royal's argument seems to misconstrue Social Security Ruling (SSR) 96-8p's instruction that the "RFC is an assessment of an individual's ability to do sustained work-related [ ] activities in a work setting on a regular and continuing basis." SSR 96-8P, 1996 WL 374184, at *1. Royal assumes that Dr. Edmond's finding that he cannot "depend on [the] left [arm] on a continued type basis" means that he cannot do "sustained" work activities "on a regular and continuing basis"; thus, he is disabled. But a limitation against "continual" use of his left arm does not prevent Royal from working on a sustained basis altogether with respect to the RFC determined by the ALJ, which calls for occasional pushing and pulling, no overhead reaching, and frequent handling/fingering. (Tr. 61). As the Commissioner recognizes, the mere fact that a claimant is restricted to "occasional" exertional limitations does not mean that he or she cannot do any work

7

on a sustained and continuing basis. (ECF No. 14, PageID.691.)

Second, the ALJ's analysis is supported by substantial evidence in the record. A claimant's RFC is defined as "the maximum degree to which [he] retains the capacity for sustained performance of the physical-mental requirements of jobs." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(c). Social Security Ruling 96-8p states that a claimant's RFC represents his ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." *See* 1996 WL 374184 at *1, (Social Security Administration, July 2, 1996). "In formulating a residual functional capacity, the ALJ evaluates all relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." *Eslinger v. Comm'r of Soc. Sec.*, 476 Fed.Appx. 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3)).

The ALJ complied with the substantial evidence standard in this case. (Tr. 16). Here, the ALJ weighed Dr. Edmond's statement that Royal could not "depend on his left upper extremity on a continued type basis" against other competing evidence in the record, reasonably finding an inconsistency:

> [Royal] alleges a significant problem with his left shoulder since the old gunshot injury. However, in the hospital reports in the record, [Royal] does not complain of pain or poor use of his left upper extremity. This seems inconsistent with a person who really has a substantial left shoulder problem. It is noted that this is his non-dominant upper extremity. This [ALJ] recognizes that in Exhibit B-4F, Dr. Elizabeth Edmond stated that the claimant cannot depend on sustained use of his left upper extremity. But that statement seems inconsistent with the fact that Dr. Edmond reported 120 degrees of abduction and forward elevation of the left shoulder and a full range of motion of the hands and fingers. Dr. Edmond also stated that the claimant can open a jar, pick up a coin, write, button, and tie shoes. Exhibit B-2F, page 136 states that the claimant has a normal range of motion, normal muscle strength, and an equal grip. Exhibit B-3F in April 2016 also states that the claimant has a normal range of motion. Exhibit B-5F, in September 2016 states that the claimant is neurologically intact. In March 2016 in Exhibit B-3F, there was not even any musculoskeletal

             tenderness.
(Tr. 16).

      The ALJ's citations to the record evidence are appropriate and support the RFC limitations he ultimately adopted. Although Royal alleged a disability onset date of April 24, 2000 (around the time he suffered a gunshot wound), there is a narrow period of potential disability benefits in this case which begins on April 18, 2016 – the date of Royal's application for benefits – and ends on October 4, 2017, when the ALJ issued her decision. (*See* 20 C.F.R. § 416.202(g); Tr. 10, 194). But, as the ALJ recognized, in and around that relevant period, the medical evidence does not show Royal was complaining about his left upper extremity.

      For instance, just a few weeks before he filed his application, Royal sought treatment primarily for stomach issues. (Tr. 552). While he complained about pain in his lower back and thigh, he made no mention of a problem with his left upper extremity. (*Id.*). An examination of his extremities yielded no positive findings related to his arm. (Tr. 553, 560). Another doctor's visit a few weeks later similarly makes no reference to a problem with Royal's left upper extremity. (Tr. 571-93). Indeed, he was found to have full range of motion in all extremities. (Tr. 582). In September 2016, Royal saw Dr. Adeola Akeredolu, who noted abnormal musculoskeletal findings. (Tr. 601). However, it is clear that those findings do not relate to Royal's left arm because Royal was there for other issues and Dr. Akeredolu found Royal's extremities to be normal on that visit. (*Id.*). At a doctor's visit toward the end of the relevant period, Royal presented for nausea, headaches, and abdominal pain, and not because of his left upper extremity. (Tr. 608-12). Moreover, he was found to have no difficulties with feeding, bathing, dressing, grooming, toileting, or doing errands. (Tr. 609). Finally, as the Commissioner argues, Dr. Edmond did not opine that Royal had no use of his left upper extremity, but rather, that his left shoulder's range of motion was partially limited. (Tr. 597). Dr. Edmond also found that Royal's left elbow, wrist,

9

hand and finger range of motion were normal, and that he could push and pull while sitting. (Tr. 597-99).

All of the foregoing shows that the ALJ did not err in his handling of Dr. Edmond's statement, and that the RFC ultimately adopted by the ALJ is supported by substantial evidence. Royal's argument that the ALJ "conveniently picked out" evidence that supported her RFC, but ignored other evidence is unavailing. (ECF No. 12, PageID.673-76.) As detailed above, the ALJ fairly weighed the competing record evidence, including the portion of Dr. Edmond's opinion that was in Royal's favor. (Tr. 16). ALJs are not required to address every piece of evidence in the record so long as they weigh all the evidence as a whole and address the evidence that detracts from her findings. *Trudell ex. Rel. Bushong v. Apfel*, 130 F. Supp. 2d 891, 895 (E.D. Mich. 2001) (quoting *Garner*, 745 F.2d at 388). ALJ Guyton did just that, and, thus, her RFC is supported by substantial evidence.

## III. CONCLUSION

For the reasons set forth below, the court recommends that the Commissioner's Motion for Summary Judgment **(ECF No. 14)** be **GRANTED**, Royal's Motion for Summary Judgment **(ECF No. 12)** be **DENIED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

Dated: December 16, 2019             s/David R. Grand  
Ann Arbor, Michigan                DAVID R. GRAND  
                                           United States Magistrate Judge

## NOTICE

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific

objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 16, 2019.

                                                s/Eddrey Butts
                                                EDDREY BUTTS
                                                Case Manager